```
FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Dec 06 2024

KEVIN P. WEIMER , Clerk

By: Kari Butler
    Deputy Clerk
```

(USAO GAN 6/10)  Search Warrant

# United States District Court
### NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

Two Cell Phones Seized on November 24, 2024

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**
Case number: 4:24-MC-122

I, Jason D. Dykes, depose and say under penalty of perjury:

I am a Special Agent of the Alcohol, Tobacco, Firearms and Explosives and have reason to believe that in the property described as:

Two Cell Phones Seized on November 24, 2024, as further described in Attachment A, which is attached hereto and incorporated herein by reference,

in the Northern District of Georgia there is now concealed certain information and certain data, namely,

See Attachment B, which is attached hereto and incorporated herein by reference,

which constitutes evidence of a crime and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 18 , United States Code, Section(s) 842. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on attached sheet made a part hereof.

Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

*Jason Dykes*
Signature of Affiant

Jason D. Dykes

December 6, 2024
Date

Rome, Georgia
City and State

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

*Walter E. Johnson*
Signature of Judicial Officer

AUSA Calvin A. Leipold, III

I, Jason D. Dykes hereby depose and state under penalty of perjury:

## Introduction and Agent Background

1.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since November 10, 2019. While at the ATF Academy, I received extensive training in conducting federal investigations, to include interviewing witnesses, conducting surveillance, and making arrests. I am currently assigned to the ATF Atlanta Field Office, and am responsible for investigating crimes, including gun violence, illegal possession of firearms, and commercial business robberies in the Atlanta metro area. Additionally, I am a Certified Explosives Specialist Candidate.  During my candidacy period, I have received advanced training in post blast investigations, advanced explosive disposal techniques, homemade explosives, identification of destructive devices and commercial explosives. as well as attended master's level course in Arson and Explosives forensics at Oklahoma State University. Before becoming a Special Agent with ATF, I was employed as a Special Agent with the United States Secret Service from 2011-2019. During my tenure there, I was involved in investigating financial crimes and the counterfeiting of U.S. currency, conducting interviews, serving search warrants, effecting arrests, and physical protection of the President of the United States and others. Prior to my federal service I was a deputy sheriff with Putnam Co. (GA) Sheriff's Office and the Richmond Co. (GA) Sheriff's Office as well as a

Special Agent with the Georgia Department of Revenue – Alcohol and Tobacco Division.

2. As an ATF Special Agent, I am a federal law enforcement officer as described in Title 18, United States Code Section 2510(7), and am responsible for investigating and enforcing violations of federal law. As part of those investigations, I conducted physical surveillance and electronic surveillance. I have been involved in the execution of various types of arrest and search warrants, which resulted in the seizure and review of electronic evidence related to those investigations. I have analyzed telephone toll records. Through my training, education, and experience, I have become familiar with the manner in which members of a criminal organization communicate, contact each other, and use electronic communication devices to store, transmit, and distribute information to one another, and how they plan, organize, and carry out their criminal activity utilizing surreptitious meetings at their residences and/or a predetermined location. I am personally familiar with and have used all normal methods of investigation during my ATF tenure, including, but not limited to, review of online message board system accounts, informant and witness interviews, and undercover operations.

3. This affidavit is based on my personal knowledge, information from fellow law enforcement officers, and other reliable sources. Because of the limited purpose of this affidavit, however, I have not included each fact known to me, but only those facts that I believe are necessary to establish probable cause in support of the requested search warrant.

4. I make this affidavit pursuant to Rule 41 of the Federal Rules of Criminal Procedure in support of an application for a warrant to search the following electronic devices (hereinafter, the "**SUBJECT ELECTRONIC DEVICES**"):

1. **SUBJECT DEVICE 1**: A Blue/Grey Motorola cellular phone that was found on the person of Amanda Causey at the time of her arrest; and

2. **SUBJECT DEVICE 2**: A Black Motorola Phone with a black case with a metal device in the center. Located on the phone is a sticker with the information (Model: XT2415V, FCC ID: IHDT56AN5, Part No.: GPMTXT2415VCB, IMEI: 352027982727817, Track ID: ZY22K893T, Date: 2024-07-24) This device was located during the arrest of Terrance CULBERSON.

5. The **SUBJECT ELECTRONIC DEVICES** are currently in the custody of the Bartow County Drug Task Force, in the Northern District of Georgia. The **SUBJECT ELECTRONIC DEVICES** are further described in Attachment A, incorporated into this affidavit by reference.

6. As set forth below, I respectfully submit that there is probable cause to believe that there is now stored in the **SUBJECT ELECTRONIC DEVICES** data certain information and data described in Attachment B, which constitutes evidence of a crime, or contraband, fruits of crime, or other items illegally possessed, or property designed for use, intended for use, or used in committing a crime, concerning violations of 18 U.S.C. § 842

(Possession of an explosive by a prohibited person). The applied-for search warrant would authorize the forensic examination of the **SUBJECT ELECTRONIC DEVICES** to identify electronically stored data more particularly described in Attachment B, incorporated into this affidavit by reference.

<u>**Probable Cause**</u>

**Agents Execute a Search Warrant**

7. On November 7th, 2024, agents with the Floyd County Drug Task Force obtained and executed a state search warrant at 284 Thomas Bluff Rd. NE Rome, Georgia, which is in the Northern District of Georgia. The property has a residence that previously owned by Terry Culberson, Terrance CULBERSON's Father, who is deceased. At the time of the warrant, CULBERSON was wanted on a probation violation related to an original charge of Trafficking Methamphetamine out of Gordon County, GA.

8. During the course of the execution of the search warrant and the subsequent search the following items in total were found on the property in various locations: 45 firearms were located (8 of these firearms were reported stolen to include a silencer under the preview of the NFA), approximately 1,561 grams of suspected methamphetamines, approximately 151 grams of suspected marijuana, and 19 vials of suspected testosterone that is not prescribed to CULBERSON. Additionally, syringes, scales and smoking devices were found. Additionally, 16 atlas blasting caps were found as well as 4 suspected explosive devices. Additionally,

located in the back yard was a Ruger Security-9 semi auto pistol and a cellular phone.[1] On the home screen of the cell phone was a photograph of an individual who looks like CULBERSON with a female.

9. When agents executed the warrant, CULBERSON fled the residence and was not apprehended.

10. On November 8th, 2024 I spoke with Georgia Bureau of Investigation (GBI) Special Agent (SA) Ghee Wilson in regard to this incident (Case 241100211PD). GBI SA Wilson provided me with the name Terrance CULBERSON along with his DOB and FBI number.

11. On November 12th, I requested a National Firearms Registration and Transfer Record (NFRTR) which revealed that CULBERSON did not have any firearms subject to registration. Also due to the explosives, I requested a Federal Explosives License database check for CULBERSON, which returned no record for licenses or permits. Additionally, I requested all information for CULBERSON maintained by the Georgia Department of Community Supervision (DCS). These records showed that CULBERSON had been convicted for felonies in Georgia and had been noticed about being a convicted felon and is currently under supervision of DCS.

12. On November 15th, 2024, I met with Inv. Pledger at the Floyd Co. Drug Task Force. I inspected the firearms seized and conducted a field

---

[1] In a previous warrant, I described this phone as being located near the back door of the residence. Upon further review of photos of the seized phone and discussion with agents who were on the scene, the phone is more accurately described as being in the back yard, not by the back door. *See* Case No. 4:24-MC-121.

function test on two AR variant firearms. Both of these firearms yielded a positive indication as to the function of a machinegun and both had an auto sear installed. Also, a suspected privately made silencer and an Advanced Armament silencer (stolen) was located.

13. On November 15th, 2024, Inv. Pledger, Inv. Harrell and I spoke with a family member of CULBERSON. The family member confirmed that shortly after the discovery of CULBERSON's father's body at 284 Thomas Bluff Rd. NE Rome, GA in August of 2024, that CULBERSON and his girlfriend Amanda "Mandy" Causey moved into this residence. The family member had made visits to this address on several occasions and advised that CULBERSON and Causey were the occupants. The family member was able to identify that a grey SUV (later determined to be a Nissan Pathfinder) was not present on the property while her grandfather was alive. Located inside this Pathfinder were 35 firearms including one machinegun and 16 Atlas electric blasting caps.

14. On this same date, the firearms, suspected drugs, and the cell phone were taken into ATF custody as evidence.

15. On November 18th, 2024, ATF SA Ryne Holsomback conducted field testing on the suspected methamphetamine which indicated a positive result.

**Agents Arrest CULBERSON and Causey**

16. On November 24, 2024, agents arrested CULBERSON and Causey. CULBERSON fled and was arrested after a vehicle chase. Causey was arrested in a Wal-Mart in Cartersville Georgia. After her arrest, Causey was Mirandized and interviewed. She agreed to speak with local agents.

17. Causey told agents that CULBERSON possessed the firearms and explosives and that guns were hidden in the walls of the residence.[2] When asked about a machine gun found during the search warrant, Causey identified the machine gun in a black Dodge Ram pickup truck as being CULBERSON's gun and said that CULBERSON refers to the machinegun as his "baby." Causey also said that CULBERSON had researched for information on the internet for the penalties associated with possessing blasting caps.

18. On December 3rd, 2024, I, along with Inv. Misty Pledger with the Floyd Co. Drug Task Force, went to the Floyd Co. Jail and spoke with Amanda CAUSEY.  CAUSEY advised that the cellphone she had (**SUBJECT DEVICE 1**), that was taken by the Bartow Co. Drug Task Force, was given to her by CULBERSON, at some point between November 7th and November 24th, 2024 (this is the time frame that CULBERSON and Causey were on the run from law enforcement).   Causey was able to clarify that while her and CUBLERSON were on the run is when, with these phones is when both CULBESON and Causey began searching for penalties for possessing blasting caps. Based on Casey's statements, I

---

[2] Agents located firearms concealed in the bathroom walls during the search warrant. This was consistent with the information provided by Causey during her interview.

believe that the **SUBJECT ELETRONIC DEVICES** contain evidence of searches related to blasting caps. As CULBERSON was not in direct possession of the blasting caps when he was arrested, these search show evidence of his knowledge and possession of the blasting caps seized from his residence.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT ELECTRONIC DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT ELECTRONIC DEVICES** because:

   a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f) I know that when an individual uses an electronic device the individual's electronic device will generally serve both as an instrumentality for committing the crime, and as a storage medium

9

for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

21.   *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

## CONCLUSION

22.   Based upon the evidence and the facts set forth in this affidavit, I respectfully request that the Court issue a search warrant for the **SUBJECT ELECTRONIC DEVICES** because probable cause is established that evidence of 18 U.S.C. § 842 (Possession of an explosive by a prohibited person); will be located in the data of the S**UBJECT ELECTRONIC DEVICES**.

## ATTACHMENT A

## Property to Be Searched

**SUBJECT ELECTRONIC DEVICES**:

**SUBJECT DEVICE 1**: A Blue/Grey Motorola cellular phone that was found on the person of Amanda Causey at the time of her arrest; and

**SUBJECT DEVICE 2**: A Black Motorola Phone with a black case with a metal device in the center. Located on the phone is a sticker with the information (Model: XT2415V, FCC ID: IHDT56AN5, Part No.: GPMTXT2415VCB, IMEI: 352027982727817, Track ID: ZY22K893T, Date: 2024-07-24) This device was located during the arrest of Terrance CULBERSON.

The **SUBJECT ELECTRONIC DEVICES** are in the custody of the Bartow County Drug Task Force, which is located in the Northern District of Georiga.                                                                                            .

ATTACHMENT B

All records on the **SUBJECT ELECTRONIC DEVICES** that relate to violations of 18 U.S.C. § 842 (Possession of an explosive by a prohibited person) that involve, Terrance CULBERSON, and/or unidentified co-conspirators, from November 7, 2024 until November 24, 2024:

1. All user/ownership information, to include the names, addresses, or any other identifying information.

2. Device identifiers/serial numbers (MEID, ESN, IMSI, IMEI) for each SUBJECT DEVICE and activation date(s) and deactivation date(s) for all devices on account.

3. Call detail records, including detailed information in reference to all known outgoing and incoming voice calls and video calls associated with each SUBJECT DEVICE, dates and times calls were made, and duration of all calls made or received.

4. Stored communication records to include e-mails, voicemail messages, all text and multimedia messages and its content currently stored in each SUBJECT DEVICE.

5. All data activity records to include all assigned IP address, all internet search history to include web history, searched items, words, websites, date and time access and duration of said access that is currently stored in each SUBJECT DEVICE.

6. All stored contacts, calendar events, location history information (GPS) metadata, cache, temporary internet files, stored Wi-Fi network connection logs, saved passwords, and log files currently stored in each SUBJECT DEVICE.

7. All photographs, videos, and audio files stored in each SUBJECT DEVICE that relate to evidence of the aforementioned crimes.

8. All downloaded and/or installed applications currently stored in each SUBJECT DEVICE.

B. Evidence of user attribution showing who used or owned the SUBJECT ELECTRONIC DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

C. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.